MARTHA WARNER, *et al.*

*v.*

OMEGA KITTLE, *et al.*

(No. 14599)

Decided July 17, 1981.

*Sponaugle & Sponaugle, George I. Sponaugle* and *George I. Sponaugle, II, James F. Cain* for appellants.

*Harry A. Smith, III*, for appellees.

PER CURIAM:

This is an appeal by Martha Warner and others from a final order entered by the Circuit Court of Randolph County on January 31, 1979, dismissing their action to determine title to a 115 acre tract of land. The court ruled that the appellants failed to state a claim upon which relief could be granted and that their claim was barred by laches. In this appeal the appellants assert that the trial court erred in so ruling and in dismissing their case without affording them an opportunity to present evidence on the issues raised. We agree, and we reverse the decision of the circuit court.

This case involves a 115 acre tract of land located in Dry Fork District, Randolph County. Prior to 1946 that tract and two other tracts containing 160 acres and 150 acres,

less certain outconveyances, belonged to William M. Armentrout and Fannie Armentrout, his wife. On March 26, 1946, the Armentrouts executed and delivered a deed to George R. Warner which provided in part:

"That for and in consideration of the sum of Four Thousand Dollars ... the said parties of the first part do hereby grant and convey unto the said party of the second part ... the following described real estate situate in Dry Fork District of Randolph County, West Virginia, containing about One Hundred and Eighty acres and being the residue of two tracts bounded and described as follows:

"FIRST TRACT

[There follows a description of the 160 acre tract, less outconveyances].

"SECOND TRACT

[There follows a description of the second tract, less outconveyances].

* * *.

"There is also specifically herewith reserved and excepted from the operation of this conveyance that part of the original descriptions which has heretofore been condemned by the United States of America * * * it being the intent of the said parties of the first part to convey to the said party of the second part two tracts of approximately 90 acres each being the residue owned and held by said parties of the first part of the two tracts aforementioned, and it further being the intent to convey to said party of the second part all of the said tracts that they now own."

This deed did not specifically mention the 115 acre tract which is the subject of this proceeding.

On August 15, 1951, George R. Warner conveyed the property which he had received under the March 26, 1946 deed to C. A. Warner. The 1951 deed did not specifically mention the 115 acre tract. Subsequently C. A. Warner died leaving the appellants as his heirs.

On February 11, 1976, the appellants filed the complaint instituting the proceeding now before us. They alleged that after the 1951 conveyance to C. A. Warner:

"[H]e [C. A. Warner] immediately took possession of all of said real estate, occupied the same, built a large pond on said real estate for commercial fishing purposes; that he farmed one field; that he erected a building on said real estate; that he constructed a new fence along one whole side of said real estate between he [sic] and Richard Phares; that he constructed a camp ground on said real estate, which was used for commercial purposes and that he and your Complainants have otherwise occupied and enjoyed complete and full possession of the real estate without any interference or claim of right by any other person or persons ever since 1951."

The complaint also alleged that the 115 acre tract had been inadvertently omitted from the 1946 conveyance. The appellants prayed that the 1946 deed be reformed to include the 155 acre tract. They also prayed for such other relief as the court deemed proper. Lastly, they demanded a jury trial.

The appellees, the heirs of the Armentrouts, the parties-defendant below, filed an answer in which they averred, among other points, that the appellants were not entitled to any relief whatsoever, that they, in effect, had failed to state a claim upon which relief could be granted.

On December 19, 1978, the circuit court conducted a hearing in the matter. At the hearing the judge stated that the questions raised should be determined by the court sitting without a jury and that there would not be a jury trial. The appellants objected. The court also concluded that the appellants had failed to state a claim upon which relief could be granted and that any possible claim was barred by laches.

At the conclusion of the hearing, in which no evidence was taken, the court entered the order from which the appellants now appeal. From the court's ruling it is obvious that the court considered the appellees' argument that the appellants had failed to state a claim and their prayer to dismiss as a motion to dismiss for failure to state a claim upon which relief could be granted, the type of motion governed by Rule 12(b)(6) of the Rules of Civil Procedure.

In the Syllabus of *John W. Lodge Dist. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 245 S.E.2d 157 (1978), we said:

> "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In the earlier case of *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207, 212 (1977), we said:

> "For the purposes of the motion to dismiss the complaint is construed in the light most favorable to the plaintiff. The trial court's inquiry will be directed to whether the allegations constitute a statement of a claim under Rule 8(a). A motion to dismiss for failure to state a claim is viewed with disfavor . . . ."

Given these points, the question in the case before us becomes: did the complaint, when construed in the light most favorable to the appellants state a claim upon which relief can be granted?

The appellants allege that they stated two claims: (1) that the 1946 deed should be reformed to include the 115 acre tract; and (2) that they are owners of the tract by adverse possession. Our rule regarding reformation of deeds is set forth in Syllabus Point 1 of *Johnston v. Terry*, 128 W.Va. 94, 36 S.E.2d 489 (1946):

> "A court of equity has power and jurisdiction to decree the reformation of a deed executed through a mutual mistake of the parties as to what is intended therein, or through a mistake of a scrivener in failing to make the agreement express the mutual intention of the parties, where such reformation is sought as between the parties, or the successor of either, who, at the date he acquired an interest in the property affected by such deed, had notice of the grounds on which reformation is sought."

Our rule on adverse possession is:

> "One who seeks to assert title to a tract of land under the doctrine of adverse possession must

prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title." Syllabus Point 3, *Somon v. Murphy Fabrication & Erection Co.*, 160 W. Va. 84, 232 S.E.2d 524 (1977).

However, we have long recognized that no formal pleading is required to allege adverse possession. Any language which will apprise the opposing party that the statute of limitations for adverse possession is being relied upon is sufficient if such facts are stated as are necessary to show that the statute is applicable. *Talbott v. Woodford*, 48 W. Va. 449, 37 S.E. 580 (1900); *Humphrey v. Spencer*, 36 W. Va. 11, 14 S.E. 410 (1892).

In the complaint instituting the case before us the appellants alleged that:

"[W]hen William Armentrout and his wife executed and delivered a deed to George Warner, they erroneously and by mistake failed to accurately describe all of their real estate in said conveyance and one parcel of said real estate consisting of approximately ____ acres, was inadvertently omitted from said conveyance."

This allegation, together with the other allegations of the complaint, when viewed in the light most favorable to the appellants, as required by *Chapman v. Kane Transfer Co., supra,* is adequate to show that the appellants were claiming that through a mutual mistake of the parties the 1946 deed failed to reflect what was intended. This averment alleged facts, which if proven, would support reformation of the deed.

Additionally, in their complaint the appellants alleged that their predecessor immediately occupied the premises in question, treated it as his own, and occupied it without interference since 1951. The language of their averment

was similar to that in *Humphrey v. Spencer, supra,* which held sufficient to support adverse possession.* In light of this, and in light of the requirement that on a motion to dismiss for failure to state a claim on which relief can be granted, the evidence should be viewed in the light most favorable to the plaintiff, we conclude that the appellants' allegation that they had enjoyed full and complete possession since 1951 "without any interference or claim of right by any other person or persons since 1951" was adequate to allege adverse possession.

Having concluded that the appellants' complaint adequately alleged entitlement to reformation and adverse possession, we conclude that the trial court erred in dismissing the appellants' complaint for failure to state a claim upon which relief could be granted.

A secondary problem involved in this case is whether the appellants' claim for reformation is barred by laches. In *Harrison, et al. v. Miller, Exec.,* 124 W. Va. 550, 550, 21 S.E.2d 674, 675 (1942), *quoting* Syllabus Point 2 of *Bank of Marlinton v. McLaughlin,* 123 W. Va. 608, 17 S.E.2d 213 (1941), we stated that:

> "Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right."

In the later case of *Bank of Mill Creek v. Elk Horn Coal Corp.,* 133 W.Va. 639, 57 S.E.2d 736 (1950), we reasoned that the basis for the application of the doctrine of laches presupposes the want of diligence and activity of the party litigant, which has wrought a change of position by, or disadvantage to his adversary. We noted, however, that a lack of activity and diligence does not affect the rights of a party, when such party has no knowledge of his rights, and knew no fact or facts putting him on inquiry. *See, Baker v.*

---

* In *Humphrey v. Spencer, supra,* the allegation was: "[F]rom the 11th day of April, 1876, to the 17th day of May, 1887—more than eleven years—this defendant has had undisputed and undisturbed possession of the property claimed under said Paul Neal, . . . ." together with the language that the party had paid taxes and that her title had never been disputed.

*Schofield*, 243 U.S. 114, 37 S.Ct. 333, 61 L.Ed. 626 (1917). We concluded:

> "Laches does not commence to run against a party complaining of a wrongful transaction of another until such complaining party has knowledge thereof, or knows facts sufficient to put him on inquiry with respect thereto." Syl. pt. 2, *Bank of Mill Creek v. Elk Horn Coal Corp., supra.*

The record of the case before us indicates that the appellants and their predecessors had been involved in no dispute regarding the 115 acre tract until 1975 when the United States Government proposed to purchase certain land. It was apparently as a result of the government's title investigation that appellants became aware of the missing acreage in their deed. There is no indication that they had any knowledge that there was any challenge to their ownership of the tract before 1975. In view of these circumstances and in accordance with our holding in *Bank of Mill Creek v. Elk Horn Coal Corp., supra,* we conclude that laches commenced running in 1975. Shortly thereafter, on February 11, 1976, the appellants filed the complaint instituting this proceeding. The complaint was filed within a reasonable time after the appellants received notice of the problem concerning the title. In light of these facts we conclude that the circuit court erred in holding that the appellants' action barred by laches.

In this proceeding the appellants also contend that the trial court erred in denying them a jury trial. While Rule 2 of the Rules of Civil Procedure has abolished the distinction between law and equity, it has been recognized that the right to a jury trial still depends upon whether one had that right prior to the adoption of the Rules. As stated in Lugar & Silverstein, *West Virginia Rules* p. 29:

> "Jury trials as a matter of right are limited to the same kinds of actions as under the old practice, execpt where the parties agree otherwise under Rule 39(c). If under Rule 18(b) the plaintiff seeks in the same action both a money judgment and the avoidance of a fraudulent conveyance, he will be entitled to a jury trial only on the claim for money

> damages. The other question will be tried by the court. In an appropriate case a partial judgment can be entered on the jury verdict."

It was generally recognized prior to our adoption of the Rules of Civil Procedure that the court acting as a court of equity was the proper forum for the reformation of a deed on the ground of mutual mistake. *Baxter v. Tanner*, 35 W.Va. 60, 12 S.E. 1094 (1891); *see, Jarrell v. Jarrell*, 27 W.Va. 743 (1886); *Western Min. & Mfg. Co. v. Peytona Cannel Coal Co.*, 8 W.Va. 406 (1875). On the other hand, adverse possession has normally involved questions for the jury. *Goad v. Walker*, 73 W.Va. 431, 80 S.E. 873 (1914).

Because we have concluded that the trial court committed reversible error in dismissing the appellant's complaint and in holding that any ground asserted upon which relief could be granted was barred by laches, the judgment of the Circuit Court of Randolph County is reversed, and this case is remanded for trial.

*Reversed and remanded.*